IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BYRON F. DAVID, | ) |
| *Appellant*, | ) |
| v. | ) Case No. 1:22-cv-1053 (PTG/IDD) |
| DONALD F. KING, | ) |
| *Appellee*. | ) |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Debtor-Appellant Byron F. David's appeal from United States Bankruptcy Judge Klinette H. Kindred's September 2, 2022 Order Reconsidering and Amending Employment and Fee Order. Dkt. 1. The appeal presents the following question of law: whether a bankruptcy court has the authority to approve, *nunc pro tunc*, a retention application for a former Chapter 11 trustee to employ professional persons on behalf of a bankruptcy estate, effective only for the Chapter 11 time period. Following a remand from this court, U.S. Bankruptcy Judge Kindred ("the Bankruptcy Court") approved, *nunc pro tunc*, an application for Chapter 11 trustee Donald F. King to employ a law firm—retroactively applying the approval to dates prior to the bankruptcy proceedings' conversion from Chapter 11 to Chapter 13. This appeal is fully briefed and ripe for disposition. The Court heard oral argument on June 2, 2023. Dkt. 7. For the reasons that follow, the Court affirms the Bankruptcy Court's September 2, 2022 Order.

### I.   BACKGROUND

**A. Initial Proceedings in the Bankruptcy Case (Case No. 18-12396-KHK)**

On July 10, 2018, Debtor-Appellant Byron David ("David" or "Appellant") filed a

1

Voluntary Petition under Chapter 7 in the Bankruptcy Court. Appellee's Appendix ("Appellee's App.") at 1. Thereafter, the United States Trustee appointed Donald King ("King," "Chapter 11 trustee," or "Appellee") to serve as Chapter 7 trustee for the bankruptcy estate. *Id.* at 2. King selected Odin, Feldman & Pittleman (hereinafter the "law firm") as his counsel, and on November 20, 2018, the Bankruptcy Court entered an order approving such. *Id.* at 24–30. On February 27, 2019, David moved to convert the case to Chapter 11. *Id.* at 2, 31–32. On April 10, 2019, the case was converted from Chapter 7 to Chapter 11. *Id.* at 36–37. In the order converting the case from Chapter 7 to Chapter 11, the Bankruptcy Court ordered the Chapter 7 trustee (King) to file a report with the court and file proof of any claims for outstanding expenses incurred during the administration of the Chapter 7 case. *Id.* The United States Trustee appointed King to serve as Chapter 11 trustee and the Bankruptcy Court approved such. *Id.* at 38–49. David then moved to convert his case to Chapter 13. *Id.* at 53–54. On May 21, 2020, the case was converted to Chapter 13, terminating King's appointment as trustee. *Id.* at 72–73. Following the conversion, Thomas P. Gorman was appointed Chapter 13 trustee. *Id.* at 13.

After the termination of his fiduciary office, King applied for approval of Chapter 11 administrative expenses pursuant to the May 21, 2020 conversion order, *id.* at 75–93, which included professional services rendered by the law firm. David objected to the application, asserting the law firm was not properly employed once the case was converted from Chapter 7 to Chapter 11, because no additional employment application was filed. The Bankruptcy Court resolved the dispute by requiring an additional application for court approval of the firm's employment during the Chapter 11 portion of the case. *Id.* at 161–65. David did not object to this order. After King filed the additional application for court approval, David again objected to the application, arguing (1) retroactive approval was inappropriate; (2) the application included

2

excessive fees; and (3) the Chapter 11 trustee lacked standing to seek employment of counsel. *Id.* at 199–211. On November 12, 2020, the Bankruptcy Court held a hearing on King's application for court approval of the law firm. *Id.* at 231–72. At the hearing, the Bankruptcy Court indicated it would approve the employment application effective that day. *Id.* at 270. On November 24, 2020, the Bankruptcy Court entered an order granting King's motion to reconsider, approving King's application to employ counsel through November 12, 2020, and approving his requested compensation and expense reimbursement. *Id.* at 285–86. The Court found the employment application and the request for compensation reasonable. *Id.* at 269–71, 285–86. On December 8, 2020, David filed a motion to reconsider. *Id.* at 289–305. On February 1, 2021, the Bankruptcy Court entered an order denying David's motion to reconsider. *Id.* at 365.

**B. Litigation in the Eastern District of Virginia (Case No. 1:21-cv-174-MSN-JFA)**

On February 12, 2021, David appealed the Bankruptcy Court's February 1, 2021 Order to the United States District Court for the Eastern District of Virginia. That appeal "present[ed] a straightforward question of law: whether a Chapter 11 trustee has standing to hire professional persons on behalf of a bankruptcy estate *after* the bankruptcy proceedings have converted from Chapter 11 to Chapter 13." *David v. King*, 638 B.R. 561, 563 (E.D. Va. 2022). On January 24, 2022, District Judge Michael S. Nachmanoff vacated and remanded the Bankruptcy Court's February 1, 2021 Order, finding that the Bankruptcy Court erred in denying the Debtor's motion to reconsider its November 24, 2020 Order. *Id.* at 571. Judge Nachmanoff emphasized the fact that the November 24, 2020 Order (which approved King's application to employ counsel) indicated counsel's employment was effective through November 12, 2020—months after the proceedings were converted to Chapter 13. *Id.* at 569–71. In doing so, the court found that the Bankruptcy Court allowed "King to act on behalf of the bankruptcy estate despite his status as

3

former trustee." *Id.* at 569. Accordingly, the court held that the Bankruptcy Court committed "clear error that should have been corrected on reconsideration." *Id.* Notwithstanding that fact, the court did not disturb the Bankruptcy Court's November 24, 2020 Order. *Id.* at 563 n.1. Rather, Judge Nachmanoff vacated the February 1, 2021 Order and remanded the matter back to the Bankruptcy Court for it to "reconsider its November 24 Order in light of this decision." *Id.* at 571.

### C. September 2, 2022 Order Reconsidering and Amending Employment and Fee Order

On September 2, 2022, the Bankruptcy Court entered an order reconsidering and amending its November 24, 2020 Order. Appellant's Appendix ("Appellant's App.") at 256–57. In that order, the Bankruptcy Court amended its February 1, 2021 Employment and Fee Order, approving the prior employment of the law firm only through May 21, 2020 (the date the case was converted to Chapter 13). Appellee's App. at 399–400. On September 13, 2022, David appealed the Bankruptcy Court's September 2, 2022 Order to the United States District Court for the Eastern District of Virginia. Dkt. 1. On June 2, 2023, this Court held oral argument on the appeal. Dkt. 7.

### II. LEGAL STANDARD

Federal district courts are empowered to hear appeals from "final judgments, orders, and decrees" issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). When considering an appeal from the bankruptcy court, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.[1] *Shin v. Lee*, 550 F. Supp. 3d 313, 318 (E.D. Va. 2021) (citing *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014)). When conducting *de novo* review, the

---

[1] Originally, Appellee argued the Court should review the Bankruptcy Court's decision for abuse of discretion. Dkt. 5 at 11–12. At the June 2, 2023 hearing, Appellee conceded that *de novo* review is the proper standard under which to assess the legal issue of whether the Bankruptcy Court properly implemented this court's prior order.

4

appellate court applies the same standards of review that were applied in the court being reviewed. *See In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005).

### III. DISCUSSION

This appeal of the September 2, 2022 Order presents the following question: whether a bankruptcy court has the authority to approve, *nunc pro tunc*, a retention application for a former Chapter 11 trustee to employ professional persons on behalf of a bankruptcy estate, effective only for the Chapter 11 time period. *Nunc pro tunc* orders allow courts to rule on "a determination previously made, but for some reason improperly entered or expressed, [which] may be corrected and entered as of the original time when it should have been, or when there has been an omission to enter it at all." *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383 (4th Cir. 2012) (quoting *Maksymchuk v. Frank*, 987 F.2d 1072, 1075 n.2 (4th Cir. 1993)). The term literally means "now for then." *Id.*

Thus, the Court's inquiry begins with its *de novo* determination of whether a Chapter 11 trustee has the authority to employ professionals during Chapter 11 proceedings. The Court finds the answer is yes—Bankruptcy Code Section 327 permits bankruptcy trustees to "employ . . . professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Appellant argues that Appellee lost his authority[2] when the case

---

[2] Although Appellant uses the word "standing" in his briefing, he conceded at the June 2, 2023 hearing that what he is actually referring to is the trustee's authority. The trustee clearly would have standing—both constitutional and prudential—in this matter. Standing exists under the constitution when a party has a concrete and particularized interest in the outcome of a matter, that can be redressed by a favorable judicial decision. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). Likewise, an individual can have prudential standing if the dispute falls within a "zone of interests protected by the law invoked[,]" and the individual is the proper person to invoke the legal rights. *Id.* at 126 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). In addition, 11 U.S.C. § 327(a) provides an avenue for an attorney's or law firm's standing, in that it empowers them "to represent or assist the trustee in carrying out the trustee's duties under this title."

converted to Chapter 13, and argues that because of that fact, the Bankruptcy Court erred in empowering the former trustee to appoint the law firm. While it is true that conversion terminates fiduciary office, *see* 11 U.S.C. § 348(e), the Bankruptcy Court's September 2, 2022 Order permitted the hiring of the firm *retroactively*, covering the time period before the trustee's fiduciary office was terminated by the case's conversion to Chapter 13. *See* Appellant's App. at 256–57. Explained further below, this significantly differs from the Bankruptcy Court's February 1, 2021 Order, which was subsequently vacated by this court. *Compare id.* at 168–69, 208 *with id.* at 256–57.

Next, as explained further below, the Court finds the Bankruptcy Court did not err in utilizing a *nunc pro tunc* order to retroactively permit the former Chapter 11 trustee to employ the law firm specifically for the Chapter 11 phase. The Bankruptcy Court's September 2, 2022 Order combined its authority under 11 U.S.C. § 327(a) and its ability to issue *nunc pro tunc* orders to "approve[] the prior employment of the law firm Odin Feldman & Pittleman, P.C., by the Chapter 11 Trustee during the Chapter 11 phase of this case only, with such representation ending on May 21, 2020, the date this case was converted to Chapter 13." *Id.* 256–57. In effect, this allowed the former Chapter 11 trustee to act on behalf of the bankruptcy estate only for the period he was the acting Chapter 11 trustee. For the reasons that follow, the Court finds the Bankruptcy Court did not err in doing so.

### A. The Bankruptcy Court's September 2, 2022 Order Does Not Contravene This Court's January 24, 2022 Order

On January 24, 2022, this court evaluated the Bankruptcy Court's February 1, 2021 Order Denying Debtor's Motion to Alter or Amend, ultimately deciding to vacate and remand that order. *David*, 638 B.R. at 571. Appellant suggests the Bankruptcy Court's September 2, 2022 Order contravenes that previous ruling of this court. Dkt. 4 at 6; Dkt. 6 at 12–13. In his January 24, 2022

Order, Judge Nachmanoff indicated that appeal "present[ed] a straightforward question of law: whether a Chapter 11 trustee has standing to hire professional persons on behalf of a bankruptcy estate *after* the bankruptcy proceedings have converted from Chapter 11 to Chapter 13." *David*, 638 B.R. at 563. The court found the trustee did not have standing to do such, because—pursuant to 11 U.S.C. § 348(e)—his role as trustee was terminated on May 21, 2020, when the bankruptcy proceedings converted from Chapter 11 to Chapter 13. *Id.* at 563–64. In its February 1, 2021 Order, the Bankruptcy Court approved the trustee's employment application effective as of November 12, 2020. Judge Nachmanoff explicitly noted, "it is worth reiterating that the *only* error this Court has identified with the bankruptcy court's February 1 Order is its failure to correct the underlying decision to grant King authority to act on behalf of the bankruptcy estate effective as of November 12, 2020—a date arising [] months after his service as trustee for the estate terminated." *Id.* at 571 n.4 (emphasis added). Ultimately, Judge Nachmanoff held that a former trustee has no standing to act on behalf of a bankruptcy estate months after the trustee's fiduciary office ended, again emphasizing the effective date of the Bankruptcy Court's order. *Id.* at 569–71.

On remand, the Bankruptcy Court amended its approval, making it effective only through May 21, 2020—the date of the bankruptcy proceedings' conversion from Chapter 11 to Chapter 13. Appellant's App. at 256–57. Thus, the defect Judge Nachmanoff identified has been corrected. Unlike the November 24, 2020 Order, where the Bankruptcy Court "allow[ed] King to 'employ the law firm . . . effective as of November 12, 2020" and "permitted King to act on behalf of the bankruptcy estate despite his status as former trustee," *David*, 638 B.R. at 569 (quoting to the record), the September 2, 2022 Order allowed King to employ the law firm only through May 21, 2020. Prior to May 21, 2020, King was still the Chapter 11 trustee. In other words, the Bankruptcy

7

Court's September 2, 2022 Order limited King's ability to act on behalf of the bankruptcy estate to the time period when King was the Chapter 11 trustee.

Nonetheless, Appellant posits that the Bankruptcy Court failed to properly address and analyze the error identified by this court's January 24, 2022 Order and Appellant's arguments on remand. *See, e.g.*, Dkt. 4 at 9–11, 17–18. To the contrary, the Bankruptcy Court did address Appellant's argument that a former trustee has no authority to file or litigate a post-conversion application under 11 U.S.C. § 327(a), explaining that its November 24, 2020 Order "went far beyond approving the Chapter 11 Trustee's past acts," though the Bankruptcy Court's intention was to "merely approve of Odin Feldman's employment, which employment and hiring had already taken place during the [C]hapter 11 phase of the case." Appellant's App. at 256. For that reason, the Bankruptcy Court amended its order to retroactively approve employment of the law firm ending May 21, 2020, the day the case was converted to Chapter 13. *Id.* at 256–57. Thus, via the Bankruptcy Court's order, both the former Chapter 11 trustee and law firm were permitted to operate, collect fees, etc. only until the date the case was converted to Chapter 13, which terminated the former Chapter 11 trustee's fiduciary office. Put simply, the September 2, 2022 Order did not broadly empower a former trustee to seek appointment of counsel for a bankruptcy estate, rather, it retroactively approved a trustee's application for appointment of counsel only for the Chapter 11 phase—i.e., when he was the active trustee.

Accordingly, the "clear error" committed previously by the Bankruptcy Court—allowing King to employ the law firm effective as of November 12, 2020—does not exist here. *See David*, 638 B.R. at 569. Instead, the Bankruptcy Court allowed the former Chapter 11 trustee to perform a task to wrap up the bankruptcy estate, only allowing him to act with respect to the Chapter 11 phase of the proceeding. Accordingly, the Bankruptcy Court's September 2, 2022 Order is

8

consistent with this court's January 24, 2022 Order.

### B. The September 2, 2022 Order Does Not Contravene 11 U.S.C. § 327, 11 U.S.C. § 330, or 11 U.S.C. § 348(e)

Appellant contends that the Bankruptcy Court's September 2, 2022 Order violates 11 U.S.C. § 327, 11 U.S.C. § 330, and 11 U.S.C. § 348(e). The Court disagrees. Pursuant to 11 U.S.C. § 327(a), a bankruptcy estate trustee, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." The Bankruptcy Court's approval of the employment application in the instant case did not violate § 327(a) because it is well-settled that "the decision under § 327 rests within the discretion of the bankruptcy court[.]" *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 908 (4th Cir. 1992). Even recognizing "that discretion is carefully circumscribed," *id.* at 909, the Court finds that the Bankruptcy Court did not err in exercising such.

Appellant further argues the fees at issue should not have been awarded because the Chapter 11 trustee had not been retained properly under 11 U.S.C. § 330, which governs payment of professional fees following an application and bankruptcy court's approval. Dkt. 4 at 15–16. However, 11 U.S.C. § 330(a)(1) states that after proper notice and a hearing, "the court may award to a trustee . . . a professional person employed under section 327 . . ." Appellant's argument is predicated on the theory that one must have approval under 11 U.S.C. § 327 before a bankruptcy court can approve fees under § 330. Since the Court finds no error with the Bankruptcy Court's approval under 11 U.S.C. § 327, its September 2, 2022 Order does not violate § 330.

While it is well-settled that the Bankruptcy Court has discretion to approve employment applications, Appellant argues that because the application was filed after the termination of the

9

Chapter 11 trustee's fiduciary office via conversion, the Bankruptcy Court's approval of that application violates 11 U.S.C. § 348(e). Appellant's argument is unpersuasive for a myriad of reasons. First, 11 U.S.C. § 348(e) reads, "[c]onversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion." The Bankruptcy Court's September 2, 2022 Order is consistent with that mandate because it only approved the law firm's representation until May 21, 2020—thus the ruling only approved the law firm's employment for the period prior to the termination of the Chapter 11 trustee's fiduciary office.

Moreover, Appellant cites no binding authority to support the proposition that the Bankruptcy Court cannot use its discretion to grant, or abuses its discretion when it grants, a former trustee leave to file an application covering only the time period during which they were an active trustee and/or prior to conversion. To the contrary, bankruptcy courts have recognized a trustee's authority to pursue certain claims following conversion resulting in termination of fiduciary office. *See, e.g., In re Spence*, 497 B.R. 99, 111 (Bankr. D. Colo. 2013) (holding Chapter 7 trustee had standing to pursue administrative claims for work the trustee's attorney performed prior to conversion); *see also In re DeLash*, 260 B.R. 4, 8 (Bankr. E.D. Cal. 2000) (holding that a former trustee could pursue "unpaid expenses or fees arising from the rendition of pre-conversion services to the estate[.]"). Thus, it is clear that courts recognize that a former trustee has inherent authority to close out the affairs of an estate post-conversion.

Even further, the Court notes that in its April 10, 2019 Order converting the Chapter 7 case to Chapter 11, the Bankruptcy Court ordered that King, the then-Chapter 7 trustee, file a report with the court and file proof of any claims for outstanding expenses incurred during the administration of the Chapter 7 case. Appellee's App. at 36–37. Thus, King was being instructed,

as former Chapter 7 trustee, to wrap up the affairs of the estate post-conversion. Similarly, on September 30, 2020, the Bankruptcy Court directed King, the then-former Chapter 11 trustee, to file an application for court approval of the law firm's employment during the Chapter 11 portion of the bankruptcy proceedings. Appellee's App. at 161–65. This order occurred as the case was converted from Chapter 11 to Chapter 13. However, Appellant did not appeal that order. Appellant's own actions (or, inaction) suggests that he, too, was aware that even post-conversion, former trustees may pursue expenses and fees and conduct some administrative duties relating to the time period during which they were an active trustee.

In sum, nothing within 11 U.S.C. § 327, 11 U.S.C. § 330, or 11 U.S.C. § 348(e) restricts a bankruptcy judge from retroactively approving an employment application. To the contrary, bankruptcy courts can authorize professional employment and compensation of work professionals performed prior to an order approving such employment. *See, e.g.*, *In Re Mallinckrodt PLC*, 2022 WL 906462, at *7 (D. Del. Mar. 28, 2022) ("Bankruptcy courts routinely authorize retroactive approval [for retention applications] to the bankruptcy petition date, and district courts and courts of appeals routinely affirm such approvals . . ." (citation omitted)). Likewise, nothing within 11 U.S.C. § 327, 11 U.S.C. § 330, or 11 U.S.C. § 348(e) prohibits former trustees from handling administrative tasks for a bankruptcy estate specifically relating to the time period during which they were the active trustee. Notably, Appellant does not cite any authority to the contrary. Accordingly, the Court finds the Bankruptcy Court did not violate 11 U.S.C. § 327, 11 U.S.C. § 330, or 11 U.S.C. § 348(e) in its *nunc pro tunc* approval of the employment application, covering only the time period during which King was Chapter 11 trustee.

### C.     The Supreme Court's Ruling in *Acevedo Feliciano* is Distinguishable

Finally, Appellant insists that the Supreme Court decision in *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) (per curiam), and its progeny indicate that

*nunc pro tunc* relief may not be used to retroactively approve an application to retain and compensate counsel for a bankruptcy estate. Dkt. 4 at 7. In *Acevedo*, the issue was whether or not a federal court could restore a state court's jurisdiction retroactively. 140 S. Ct. at 699–700. The district court in *Acevedo* attempted to restore the state court's jurisdiction by issuing a *nunc pro tunc* remand order, indicating the order "shall be effective as of March 13, 2018." *Id.* at 700. In doing so, the district court's order created a fact that did not occur and made "the record what it [was] not." *Id.* (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)). The Supreme Court held that a federal district court could not cure jurisdictional defects that existed on the day a case was filed via a *nunc pro tunc* order. *Id.* at 699–700. Accordingly, the Supreme Court held that the *nunc pro tunc* order in that jurisdictional context was inappropriate.

At the outset, the Court notes *Acevedo* does not stand for the proposition Appellant offers—that "retroactive/*nunc pro tunc* relief may not be used to approve an application to retain and compensate counsel for a bankruptcy estate retroactively to an earlier date." Dkt. 4 at 7. The Court finds *Acevedo* is distinguishable because the instant case does not involve jurisdiction, which was at issue in *Acevedo*. *Acevedo* did not involve the approval of a bankruptcy employment application via *nunc pro tunc* order. Notably, Appellant does not identify any cases decided after *Acevedo* that explicitly held that bankruptcy courts cannot use retroactive/*nunc pro tunc* orders to retroactively approve an application to retain and compensate counsel for a bankruptcy estate.

Unlike *Acevedo*, there is no creation of fiction here—the September 2, 2022 Order does not create facts that did not occur. The Order simply approved an employment application *nunc pro tunc*. Moreover, the Bankruptcy Court's Order did not create any fiction regarding the propriety of such an application—the record makes clear the law firm did render services for the time period covered. The law firm had been approved for employment for the Chapter 7 phase,

12

but the Chapter 11 trustee did not reapply for approval of the law firm's employment for the Chapter 11 phase. *See* Appellee's App. at 29–30. Thus, the Court finds the September 2, 2022 *nunc pro tunc* Order does not contravene *Acevedo*.

Furthermore, other courts have disagreed with and rejected the argument that *Acevedo* affected the standards for the employment of bankruptcy professionals in the way Appellant suggests. *See, e.g., In re Ramirez*, 633 B.R. 297, 306 (Bankr. W.D. Tex. 2021) ("All but one time a court analyzed *Acevedo* in the context of an application to grant retroactively an application to employ professionals, the court determined that *Acevedo* did not preclude such action."). For example, in *In re Oaktree Med. Ctr., LLC*, the bankruptcy court found that a *nunc pro tunc* order did not conflict with *Acevedo* because the order, which authorized employment of professionals, "[did] not create new facts, but rather reflect[ed] the reality of what has already occurred[.]" 634 B.R. 465, 471 (Bankr. D.S.C. 2021). In *Oaktree*, the relevant attorneys had already been approved for employment as the trustee's general and special counsel, but later left their employer and formed their own law firm. *Id.* at 467–68. Accordingly, the bankruptcy trustee filed an application for employment of their law firm, which included the same scope of employment and compensation as the prior approved arrangement. *Id.* at 468, 471. The bankruptcy court thus found *nunc pro tunc* appropriate, and that such an order did not contravene *Acevedo*. *Id.* at 470–71.

Similarly, following *Acevedo*, bankruptcy courts have continued to issue *nunc pro tunc* orders in scenarios akin to this case, finding that *Acevedo* does not preclude such. In *Univ. of Colorado Health at Mem'l Hosp. v. Becerra*, the United States District Court for the District of Columbia criticized a characterization of *Acevedo* as holding "that a court cannot issue a *nunc pro tunc* order to revise the date of a court action or otherwise alter the history of a case." 2022 WL

2191690, at *36–37 (D.D.C. June 17, 2022). That court found that such an interpretation reflects an overly broad reading of *Acevedo*. *Id.*, at *36. *Becerra* involved a court issuing a *nunc pro tunc* order granting leave to file a supplemental complaint. *Id.*, at *37. That order "did relate to something that had occurred in the district court: the filing of the amended complaints that should have been labeled as supplemental complaints." *Id.* As a result, that court found that by granting leave *nunc pro tunc* to add claims from the plaintiff's mislabeled amended complaints, it was "simply acting 'to reflect the reality of what ha[d] already occurred[.]'" *Id.* (quoting *Acevedo*, 140 S.Ct. at 700–01). Accordingly, the court held that *nunc pro tunc* was appropriate where the order relates back to something that did occur in that same court. *Id.*

Likewise, in *Haigler v. High Tension Ranch, LLC*, the United States District Court for the Western District of North Carolina noted that courts "analyz[ing] this issue after *Acevedo Feliciano* have simply recognized that the '*nunc pro tunc*' nomenclature was imprecise—not that retroactive approval of attorneys violates the statute or the relevant rules." 2021 WL 3622149, at *4 (W.D.N.C. Aug. 16, 2021). The *Haigler* court was faced with a challenge to a *nunc pro tunc* order via a motion to dismiss. *Id.*, at *2. The defendant moved to dismiss for lack of subject-matter jurisdiction based on the fact that the bankruptcy court declined to approve, *nunc pro tunc*, a trustee's application to employ counsel. *Id.* In declining to dismiss the case, the district court noted that the case law supported approval of attorneys *nunc pro tunc*, which "has not been contravened by *Acevedo Feliciano*." *Id.*, at *4.

All in all, various cases that follow *Acevedo* limit its applicability. So too here. For the aforementioned reasons, the Court finds *Acevedo* distinguishable, and that its existence does not preclude the Court's affirmance of the Bankruptcy Court's September 2, 2022 Order.[3]

---

[3] Appellee makes additional arguments—namely regarding statutory interpretation and the idea that a successive employment application was not required at all, Dkt. 5 at 49–54—but the Court

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's September 2, 2022 Order Reconsidering and Amending Employment and Fee Order is **AFFIRMED**.

It is **SO ORDERED**.

Dated: August 4, 2023
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

---

declines to opine on those issues, as it affirms the Bankruptcy Court on the aforementioned grounds.